## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| JANICE WILLIAMS, ANTONIO RODRIGUEZ, JR., PRINCESS DIANE PIPPEN, DIANE AND MAYA ROBINSON, | CLASS ACTION COMPLAINT |
| Individually and on Behalf of All Others Similarly Situated. | JURY TRIAL DEMANDED |
| *Plaintiffs,* | Civil No.: 5:20-cv-00048 |
| v. | |
| NIBCO, Inc., | |
| *Defendant*. | |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs Janice Williams, Antonio Rodriguez, Jr., Princess Diane Pippen, Diane Robinson and Maya Robinson, individually and on behalf of themselves and others similarly situated, by and through their attorneys, file this Original Class Action Complaint against Defendant NIBCO, Inc. In support, Plaintiffs state the following:

## I.　INTRODUCTION & NATURE OF THE CASE

1.　This is a class action lawsuit seeking relief for Plaintiffs and all other class members similarly situated for the injuries and damages Plaintiffs have sustained as a result of PEX Plumbing system parts and components manufactured, sold, and designed by NIBCO, Inc. (NIBCO). Plaintiffs reside and have homes in parts of Texas and Alabama. Plaintiffs are excluded from a previous nationwide class settlement.

2. Specifically, these class members have suffered injuries and damages in their respective homes and properties due the following: (1) cross-linked polyethylene plumbing tubes (herein "PEX Tubing"), (2) the brass fittings required to connect the PEX Tubing together (herein "PEX Fittings"), and (3) the stainless steel clamps (herein "PEX Clamps") required for joining the PEX Tubing and PEX Fittings.

3. This class action seeks relief on behalf of Plaintiffs and other class members residing in Texas and Alabama similarly situated that were excluded from the nationwide class action settlement in *Kimberly Cole, et al.*, *on behalf of themselves and all others similarly situated*, vs. *NIBCO, Inc.*, No. 13-cv-7871 (Dist. New Jersey).

4. As further explained below, "class members" and/or the "Class" for this litigation collectively consists of two subclasses that apply to plaintiffs residing in the States of Texas and Alabama that were excluded from the above settlement. Each of the above-named Plaintiffs had one or more of these PEX parts or components installed in their homes in the State of Texas or the State of Alabama.

5. As discussed below, the PEX Tubing, the PEX Fittings and the PEX Clamps at issue are all manufactured or distributed by Defendant NIBCO, Inc. ("NIBCO" or "Defendant") at all material times. Unless specified otherwise below, the phrase "PEX Products" or "PEX System" will collectively refer to NIBCO's defective PEX Tubing, PEX Clamps and/or PEX Fittings.

6. NIBCO's PEX system, parts and/or components alleged in this complaint suffer from undisclosed design and/or manufacturing defects that frequently cause them

to fail prematurely in one or more ways.  These include:

  a. Specifically, the PEX Tubing suffers from a design and/or manufacturing defect because it is prone to premature oxidative failure and creep rupture;

  b. The PEX Tubing suffers from a design and/or manufacturing defect because they are prone to stress-induced fractures as a result of chloride-induced cracking and/or as a result of their design and chemical composition conjoined with PEX Fittings.

  c. The PEX Fittings suffer from a design and/or manufacturing defect because they are prone to dezincification corrosion.

  d. The PEX Clamps suffer from a design and/or manufacturing defect because they are prone to failure by chloride-induced stress corrosion cracking.

7. When one or more of these PEX parts and components fail, it leads to the permeation, leaking, and/or release of water, which can cause significant damage to surrounding property and/or prevents the plumbing system from functioning as intended.

8. Defendant NIBCO, Inc. ("NIBCO") has manufactured and advertised its PEX Products (including the fittings, tubing, and clamps) for use in plumbing systems throughout the United States, including the states of Texas and Alabama.

9. DR Horton is a construction company headquartered in Arlington, TX.

10. Most Plaintiffs and class members' respective homes in this action were constructed by DR Horton in the States of Texas and Alabama.

11. NIBCO has represented that consumers should trust NIBCO to provide the highest quality PEX Products because the company has over 100 years of industry experience and is an industry leader in the manufacture of PEX Products.

12.     At all material times, NIBCO has manufactured, warranted, advertised and sold the PEX Products at issue. This includes representations made directly and indirectly to Plaintiffs and Class Members, as well as their agents and/or representatives.

13.     At all material times, DR Horton has built various homes that contained PEX parts, components, and products, including in Plaintiffs and class members' homes.

14.     At all material times, NIBCO's sales catalog advertised that, *inter alia*, its PEX tubing was the highest quality PEX tubing available and that its cross chemical bonding process gave it "superior characteristics."

15.     At all material times, NIBCO warranted that its PEX tubing would be free from any defects in materials and workmanship for a period ranging from ten (10) years to twenty-five (25) years, dependent upon whether NIBCO PEX fittings and NIBCO valves and installation accessories were also used in the installation.

## NIBCO® PEX Warranty

### NIBCO INC. LIMITED WARRANTY
Applicable to NIBCO INC. PEX Piping Systems

NIBCO INC. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor. This 25-year warranty is voided if any non-NIBCO products are used in the PEX system. NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions, use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period of ten (10) years form the date of purchase. NIBCO INC. warrants NIBCO® PEX fittings, manifolds, transition fittings and valves under normal conditions, use and service in potable water and radiant heat systems, to be free from defects in materials and workmanship for a period of ten (10) years from the date of purchase. NIBCO INC. warrants NIBCO® associated hardware and tools for a period of 90 days from the date of purchase.

*See* PEX Warranty, a true and correct copy is attached as Exhibit A.

16.     Contrary to NIBCO's various representations, warranties, and/or affirmative statements, the PEX Products suffer from design and/or manufacturing defects.

17.     As a result of these defects, Plaintiffs' and class members have suffered injuries in their respective homes and have incurred considerable monetary damages.

18.     Specifically, and as a result of such defects, the PEX Tubing is predisposed to premature oxidative failure and creep rupture, the PEX Fittings are predisposed to prematurely fail as a result of dezincification corrosion, and the PEX Clamps are predisposed to prematurely fail as a result of chloride-induced stress corrosion cracking (collectively, the "PEX Product Defects").

19.     NIBCO has systematically breached its warranty to Plaintiffs and other class members by failing to fully or adequately compensate property owners who have been injured as a result of the PEX Product Defects.

20.     Further, NIBCO has also breached its legal duties including a failure to act as a reasonably prudent company in the manufacture and design of PEX products, failure to disclose PEX Products' defects, and failure to warn about these defects.

21.     NIBCO also failed to disclose this material information to Plaintiffs and Class members.  Upon information and belief, the material information listed above was also not communicated to homebuilders in Texas and Alabama such as DR Horton.

22.     Before manufacturing, warranting, advertising and/or selling the PEX Products, NIBCO failed to take appropriate steps to ensure that its products were safe for their intended use.

23.    NIBCO knew or should have known that the PEX Products were defective, had problems, and/or were not suitable for use within water-carrying plumbing systems and that the PEX Products suffered from the PEX Product Defects.

24.    NIBCO knew or should have known that the PEX Products suffered from design and/or manufacturing defects alleged in this Complaint at all material times, including their sale and/or installation in homes owned by Plaintiffs and Class Members.

25.    At times, the PEX Product Defects have caused plumbing systems to catastrophically fail and release water, which has caused and will continue to cause Plaintiffs and other class members to incur damages through no fault of their own.

26.    All Plaintiffs and Class members have also been injured at the time of sale by virtue of paying more for the PEX Products and/or their homes than they would have had the existence of the PEX Product Defects been disclosed.

27.    Plaintiffs seek relief for damages sustained that were proximately caused by NIBCO's Defective PEX Products used in Plaintiffs' individual homes and Class members' homes and other structures, or which otherwise were installed in the homes and structures of Plaintiffs and other class members in the States of Texas and Alabama.

28.    Plaintiffs seek relief through theories of breach of express warranty, breach of implied warranty, strict liability, and negligence. They also seek relief pursuant to the consumer protection statutes, products liability acts and doctrines of Alabama and Texas.

29.    Plaintiffs have not participated in or received any settlement proceeds from the nationwide class action settlement.  As noted above, Plaintiffs have been excluded from this agreement.

30.     Upon information and belief, Plaintiffs and class members similarly situated have complied or substantially complied with any and all applicable conditions precedent to bringing this lawsuit under Texas and Alabama laws, respectively.

## II.     PARTIES

31.     Plaintiffs bring claims on behalf of themselves individually and other class members that reside in areas and cities in Texas and Alabama.

32.     The NIBCO nationwide class action settlement lists the following areas as being excluded from the settlement agreement:

**Alabama:** Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly; Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Pratville; Springville; Trussville; and Tuscaloosa.

**Texas**: Boerne; Cibolo; Converse; Live Oak; Medina County; New Braunfels; Royse City; San Antonio; San Marcos; Schertz; Sequin; and Universal City

*See* PEX Settlement Website (*Kimberly Cole* v. NIBCO, et al).[1]

### A.     Texas Subclass Plaintiffs

### *Plaintiff Janice Williams*

33.     Plaintiff Janice Williams resides at 7202 Sandy Bay, Converse, TX 78109. Plaintiff's home is located within the Horizon Pointe subdivision.

34.     Plaintiff Janice Williams brings this case individually and behalf of all similarly situated persons in the State of Texas that reside and have homes in the cities and areas excluded from the Class Action Settlement.

---

[1] http://www.pexsystemsettlement.com/home  (Last Accessed January 13, 2020).

35.    As a result of NIBCO's PEX products and conduct as alleged herein, Plaintiff has been injured and has suffered damages.

36.    DR Horton constructed Plaintiff's home in 2009.   Plaintiff purchased this home in April 2009 for approximately $205,000.00.  Plaintiff's home is approximately 3,149 square feet.

37.    Plaintiff's residential plumbing system was installed using NIBCO PEX Products, PEX Tubing, PEX Fittings, PEX Clamps and/or installation accessories by DR Horton during its initial construction.

38.    Plaintiff was provided NIBCO's Limited PEX Warranty and reviewed this warranty.   As part of the home purchasing process, along with other material representations about the home, Plaintiff relied on the representations made in the warranty that the PEX system would perform as advertised and be free from defects stated therein.

39.    Since Plaintiff bought this home, Plaintiff has experienced approximately eight (8) different leaks throughout the home.  Three leaks have occurred since June 2019.   Plaintiff has repaired three leaks and has hired Christiansen Plumbing to repair the others.

40.    Plaintiff bought this home without being told by NIBCO, DR Horton, or anyone that the PEX system and/or components could potentially leak and cause problems.

41.    Plaintiff has continued to discover additional leaks that have caused areas of water saturation and damage throughout her home.

42.     Plaintiff complied with NIBCO's warranty and has sent off samples of PEX Plumbing to NIBCO for testing.  These samples have not been returned to her.

43.     Plaintiff has spent considerable out-of-pocket costs repairing this leak.

44.     Plaintiff has suffered an ascertainable loss as a result of NIBCO's omissions and/or misrepresentations associated with the PEX Products, including but not limited to out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within her home. The leaks in Plaintiff's home also caused significant inconvenience, mental anguish, and damage to Plaintiff's personal property.

45.     At no time did NIBCO, any of its agents, dealers or other representatives inform Plaintiff of Defendant's omission and/or misrepresentations related to the PEX Product Defects.

### *Plaintiff Antonio Rodriguez, Jr.*

46.     Plaintiff Antonio Rodriguez, Jr. resides at 7827 Juno Heights, San Antonio, TX 78252.

47.     Plaintiff brings this case individually and on behalf of other class members similarly situated in the State of Texas that reside and have homes in the cities and areas excluded from the Class Action Settlement.

48.     As a result of NIBCO's PEX products and conduct as alleged herein, Plaintiff has been injured and has suffered damages.

49.     DR Horton constructed Plaintiff's home in 2011.  Plaintiff purchased this home as a new construction in 2011.

50.     Plaintiff was provided NIBCO's Limited PEX Warranty and reviewed this warranty.   As part of the home purchasing process, along with other material representations about the home, Plaintiff relied on the representations made in the warranty that the PEX system would perform as advertised and be free from defects stated therein.

51.     Plaintiff bought this home without being told by NIBCO, DR Horton, or anyone that the PEX system and/or components could potentially leak and cause problems.

52.     Plaintiff's residential plumbing system was installed using NIBCO PEX Products, PEX Tubing, PEX Fittings, PEX Clamps and installation accessories by DR Horton.

53.     Since Plaintiff purchased this home, there have been approximately nine (9) different leaks throughout the home.   Since the initial leak in the PEX System, Plaintiff has continued to discover additional leaks that have caused areas of water saturation and damage throughout the home.

54.     Plaintiff has spent considerable out-of-pocket costs repairing this leak.

55.     Plaintiff complied with the PEX Limited Warranty by sending off PEX pipe samples to NIBCO for testing.

56.     Plaintiff has suffered an ascertainable loss as a result of NIBCO's omissions and/or misrepresentations associated with the PEX Products, including but not limited to out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within his home.  The leaks in Plaintiff's home also caused

significant inconvenience, mental anguish, and damage to Plaintiff's personal property.

57. At no time did NIBCO, any of its agents, dealers or other representatives inform Plaintiff of Defendant's omission and/or misrepresentations related to the PEX Product Defects.

### B. Alabama Subclass Plaintiffs

#### *Plaintiff Princess Diane Pippen*

58. Plaintiff Princess Diane Pippen resides at 606 Southern Trace Parkway, Leads, AL 35094.

59. Plaintiff brings this case individually and on behalf of other class members similarly situated in the State of Alabama that reside and have homes in the cities and areas excluded from the Class Action Settlement.

60. As a result of NIBCO's PEX products and conduct as alleged herein, the Plaintiff has been injured and has sustained damages as a result of these injuries.

61. DR Horton built Plaintiff's home in 2012. The home is 3,500 square feet. Plaintiff purchased this home on or about August 23, 2013 for approximately $230,900.00.

62. Plaintiff was provided NIBCO's Limited PEX Warranty and reviewed this warranty. As part of the home purchasing process, along with other material representations about the home, Plaintiff relied on the representations made in the warranty that the PEX system would perform as advertised and be free from defects stated therein.

63. Plaintiff bought this home without being told by NIBCO, DR Horton, or

anyone that the PEX system and/or components could potentially leak and cause problems.

64.     Plaintiff's residential plumbing system was installed using NIBCO PEX Products, PEX Tubing, PEX Fittings, PEX Clamps and installation accessories.

65.     Within the last few years, Plaintiff's home has experienced multiple leaks as a result of the PEX products and system installed in her home.

66.     This includes leaks occurring in the garage that caused damage to the walls and insulation in Plaintiff's home.

67.     These leaks occurred on or about September 12, 2019; September 26, 2019, October 3, 2019, and October 14, 2019.

68.     Plaintiff has had to hire Rare Plumbing and Dupree Plumbing (with DR Horton's approval) to repair various leaks in her home.

69.     Plaintiff has suffered an ascertainable loss as a result of NIBCO's omissions and/or misrepresentations associated with the PEX Products, including but not limited to out-of-pocket loss associated with repeated plumbing failures and attempted repairs of such within her home. The leaks in Plaintiff's home also caused significant inconvenience, mental anguish, and damage to Plaintiff's personal property.

70.     At no time did NIBCO, any of its agents, dealers or other representatives inform Plaintiff of Defendant's omission and/or misrepresentations related to the PEX.

### *Plaintiffs Diane and Maya Robinson*

71.     Plaintiffs Diane and Maya Robinson reside at 351 Glen Gross Way, Trussville, AL 35173-6602.

72.     Plaintiffs bring this case individually and on behalf of other class members similarly situated in the State of Alabama that reside and have homes in the cities and areas excluded from the Class Action Settlement.

73.     As a result of NIBCO's PEX products and conduct as alleged herein, the Plaintiffs have been injured and have sustained damages as a result of these injuries.

74.     DR Horton built Plaintiffs' home in 2012.   The home is approximately 2,308 square feet.   Plaintiffs purchased this home on or about August 10, 2018 for approximately $249,000.00.

75.     Plaintiffs were provided NIBCO's Limited PEX Warranty and reviewed this warranty.   As part of the home purchasing process, along with other material representations about the home, Plaintiffs relied on the representations made in the warranty that the PEX system would perform as advertised and be free from defects stated therein.

76.     Plaintiffs bought this home without being told by NIBCO, DR Horton, or anyone that the PEX system and/or components could potentially leak and cause problems.

77.     Plaintiffs' residential plumbing system was installed using NIBCO PEX Products, PEX Tubing, PEX Fittings, PEX Clamps and installation accessories.

78.     Since the initial leak in the PEX System, Plaintiffs have continued to discover additional leaks that have caused areas of water saturation and damage throughout their home.

79.     These leaks occurred on or about March 25, 2019; August 16, 2019, October

and November 5, 2019.

80.    Plaintiffs have spent considerable out-of-pocket costs repairing this leak.

81.    Plaintiffs have had these leaks repaired by Old Republic Title Home Protection and All State Home Insurance, Kat Home Builders, and Dupree Plumbing (with DR Horton's approval).

82.    Plaintiffs have suffered an ascertainable loss as a result of NIBCO's omissions and/or misrepresentations associated with the PEX Products, including but not limited to out-of-pocket loss associated with catastrophic plumbing failures and attempted repairs of such within their home.  The leaks in Plaintiffs' home also caused significant inconvenience, mental anguish, and damage to Plaintiffs' personal property.

83.    At no time did NIBCO, any of its agents, dealers or other representatives inform the Robinsons of Defendant's omission and/or misrepresentations related to the PEX Product Defects.

**C.    Defendant NIBCO, Inc.**

84.    Defendant NIBCO, Inc. (NIBCO) is incorporated under the laws of the State of Indiana with its principal place of business located at 1516 Middlebury Street, Elkhart, Indiana 46515-1167.

85.    Defendant can be served through their registered agent CT Corporation System at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

86.    In addition to the PEX Products previously described, NIBCO manufactures plumbing valves, plastic fittings and flow control solutions for commercial, industrial and institutional construction, and for the residential and irrigation markets.

87.     NIBCO operates ten manufacturing plants in the United States, Mexico and Poland, and has more than 2,000 employees.

88.     At all relevant times, Defendant NIBCO manufactured, marketed, distributed, sold, and warranted the PEX Products, System, and Components throughout the United States, including the States of Texas and Alabama.

89.     NIBCO has sent inspectors to various homes in the States of Texas and Alabama to inspect various PEX components, parts, and systems.

### III.     <u>JURISDICTION AND VENUE</u>

90.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs.   28 U.S.C. § 1332(d)(2)(A).

91.     Moreover, this lawsuit is a class action in which some members of the Class are citizens of states different than Defendant.  28 U.S.C. § 1332(d)(2)(A).

92.     This Court has personal jurisdiction over Defendant because NIBCO conducts substantial business in the State of Texas and the State of Alabama.

93.     NIBCO has sufficient minimum contacts with the State of Texas and the State of Alabama.

94.     NIBCO is actively litigating and/or has litigated completed cases in the State of Texas, including the Western District of Texas.

95.     NIBCO intentionally avails itself of the consumers and markets within the

State of Texas and the State of Alabama through the promotion and sales of its products, including its PEX Products.

96. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the acts giving rise to Plaintiffs' claims occurred in this district, and because Defendant conducts substantial business in this judicial district.

## IV.   **FACTUAL ALLEGATIONS**

### *Background on NIBCO and PEX System/Components*

97. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

98. NIBCO sells various plumbing products including PEX Tubing, PEX Fittings, PEX Clamps and other plumbing accessories. NIBCO has been in business for over 100 years and has manufactured plumbing systems and parts during the majority of this time.

99. NIBCO states, on its website, that it is a "recognized leading provider of valves, fittings and flow control products for commercial, industrial and institutional construction as well as residential and irrigation markets."[1]

100. PEX is an acronym for cross-linked polyethylene. Polyethylene (denoted by "PE") is the raw material and the letter "X" in the acronym "PEX" refers to the cross-linking "chemical bonding" of the polyethylene across its molecular chains.

### *PEX Tubing*

101. NIBCO touts its PEX tubing as possessing "superior characteristics" due to NIBCO's cross-linking process. Specifically, NIBCO states the following about its PEX manufacturing process:

Cross-linking is the process that gives NIBCO DURA-PEX tubing its superior characteristics. The long, simple chains in a polyethylene molecule are altered to form a more stable, three-dimensional network. This process changes the material from a thermoplastic into a thermoset. A thermoset differs from a thermoplastic because a thermoset cannot be melted and then reformed. This change in molecular structure creates a polyethylene product with enhanced mechanical properties. Many manufacturers use a chemical additive to activate the cross-linking process, but NIBCO employs a sterile, electron beam process that provides superior properties. This process, which is called PEX-c, delivers the highest quality PEX tubing available today, while reducing the use of chemicals

102.    NIBCO advertised PEX tubing in various catalogs and brochures such as:

NIBCO® DURA-PEX® Piping Systems, Catalog C-PEX-0509, 4 (Apr. 29, 2009).

103.    NIBCO, NIBCO® PEX Piping Systems, Catalog C-PEX-1013, 4 (Oct. 1, 2013).  Cross-linking is the process that gives NIBCO DURA-PEX tubing its superior characteristics. The long, simple chains in a polyethylene molecule are altered to form a more stable, three-dimensional network. This process changes the material from a thermoplastic into a thermoset. A thermoset differs from a thermoplastic because a thermoset cannot be melted and then reformed. This change in molecular structure creates a polyethylene product with enhanced mechanical properties.

104.    Many manufacturers use a chemical additive to activate the cross-linking process, but NIBCO employs a sterile, electron beam process that provides superior properties. This process, which is called PEX-c, delivers the highest quality PEX tubing available today, while reducing the use of chemicals

105.    Despite NIBCO's attestations to the quality and superiority of its PEX Tubing, consumers all across the United States have experienced water damage and

catastrophic PEX Tubing failures caused by slow growth cracking mechanisms consistent with oxidative failure and/or creep rupture. These slow growth cracking mechanisms have been caused by the insufficient stabilization and/or improper cross-linking of the PEX material used by NIBCO to manufacture its PEX Tubing.

106.    NIBCO's PEX Tubing comes with an express warranty that warrants against defects in the materials and workmanship of the tubing.

> NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor. This 25- year warranty is voided if any non-NIBCO products are used in the PEX system. NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions, use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period ten (10) years form [sic] the date of purchase.

*See* Exhibit A (PEX Warranty).

107.    As noted above, Plaintiffs were provided this warranty as part of the home purchasing process and relied on its representations.

108.    Specifically, NIBCO's express warranty states, *inter alia*, the following: "NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor.

109.   This 25-year warranty is voided if any non-NIBCO products are used in the PEX system. NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions, use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period ten (10) years form [sic] the date of purchase."

110.   Plaintiffs substantially complied with their obligations under any warranty, including mitigation of damages.

111.   NIBCO, however, has failed to fulfill its obligation to replace the defective PEX Tubing and compensate Plaintiffs and Class members for the foreseeable property damage it caused.

### PEX Fittings and Clamps

112.   In addition to its PEX Tubing, at all material times, NIBCO also manufactured and sold the fittings, clamps, valves and installation accessories required to install a completed residential or commercial plumbing system.

113.   At all material times, NIBCO manufactured and sold the PEX Fittings that purportedly conform to ASTM standard F1807.

114.   The ASTM is a globally recognized organization (formerly known as the American Society for Testing and Materials) that develops international voluntary consensus standards. The F1807 standard applies to metal insert fittings for use with SDR9 cross-linked polyethylene (PEX) tubing, which is manufactured and/or sold by NIBCO.

115.   F1807 insert fitting systems typically use a crimped stainless steel or copper

ring to secure the PEX tubing to the fitting. The brass alloy fitting is inserted into the PEX tubing using a special tool that crimps a copper ring or stainless steel clamp around the outside of the tubing, which, in turn, creates a seal between the PEX tubing and the brass fitting. Below are examples of NIBCO's ASTM-F1807 insert fittings used with PEX Tubing.

116. At all material times, NIBCO encouraged consumers to purchase and install the fittings with its PEX Tubing. NIBCO's express warranty covers 10 years if only its PEX Tubing is installed, but NIBCO increases its express warranty coverage to 25 years if its PEX Fittings, valves, and installation accessories are used in conjunction with its PEX Tubing.

117. NIBCO's ASTM-F1807 (PEX) fittings are easily identified by a "NIBCO" stamp placed on the brass insert fittings.

118. Similar to the tubing, NIBCO's PEX Tubing comes with an express warranty that warrants against defects in the materials and workmanship of the fittings. Specifically, NIBCO's express warranty states, *inter alia*, the following "NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor."

119. Plaintiffs and the Class substantially complied with their obligations under the NIBCO PEX warranty. NIBCO, however, has failed to fulfill its obligation to replace

any defective fittings and compensate Plaintiffs and Class members for the foreseeable property damage the PEX Fittings and Clamps caused.

120.    Home builders and consumers who purchased and installed NIBCO's PEX Fittings and Clamps have experienced cracking and leaking of these products in their residential and commercial plumbing systems, causing water leaks that have and will cause extensive damage to homes, businesses and personal property of the consumers as a result of water leaks from the plumbing system.

121.    To the extent that the NIBCO PEX Warranty purports to limit or eliminate certain contractual rights afforded to Plaintiffs (e.g., on the type of recoverable damages, ability to recover property damages), such limitations are unconscionable and unenforceable under the circumstances.

122.    During the foreseeable and intended use, the NIBCO PEX Fittings are exposed to elements in residential and commercial plumbing systems which cause the NIBCO PEX Fittings to corrode and prematurely fail as the result of dezincification corrosion.

123.    After undergoing dezincification, the PEX Fittings prematurely fail and become brittle, sponge-like and/or plugged. As a result, a continuous network of tiny holes develops in the PEX Fittings, allowing water to weep through the walls of the fitting. Weakened fittings may crack or break, causing significant water damage. They may become plugged with corrosion product causing a low water pressure condition. Corroded fittings may also allow chloride-rich water to weep through the wall of the fittings, wetting the adjacent stainless steel PEX Clamp and causing the PEX Clamp to

fail due to chloride induced stress corrosion cracking

124.    NIBCO knew or should have known that the PEX Fittings and/or stainless steel PEX Clamps they manufactured, marketed and/or sold were susceptible to premature failure through dezincification corrosion and chloride-induced stress corrosion cracking respectively.

125.    The design, materials choices, and manufacturing practices of the brass fittings and stainless steel PEX Clamps marketed and sold by Defendant have created damaged products that begin to fail on their first day of use, even if properly installed in their intended environment. At all material times, NIBCO advertised that these fittings are "dezincification resistant."

126.    The stainless steel PEX Clamps fail slowly over time due to a fracture mechanism known as "chloride-induced stress corrosion cracking," which is caused by defective design and/or defective manufacturing by Defendant. For stress corrosion cracking to occur, a susceptible material must be simultaneously exposed to tensile stress and chlorides. If any one of these three things (material susceptibility, tensile stress, or chlorides) is eliminated or sufficiently reduced, stress corrosion cracking cannot occur.

127.    The failing PEX Clamps are manufactured from a stainless steel alloy that is known to be susceptible to stress corrosion cracking in the presence of chlorides, and these clamps are used in a design where simultaneous exposure to static tensile stress and chlorides is (or should have been) reasonably anticipated. Stress corrosion cracking could not occur in the PEX Clamps if the clamps were manufactured from a material that is not susceptible to chloride-induced stress corrosion cracking.

128.     Alternate materials that are generally immune to chloride-induced stress corrosion cracking (exhibiting little or no susceptibility) and that are approved for plumbing applications in the United States were readily available at little or no additional cost at the time the failing clamps were manufactured.

129.     Additionally, the failing PEX Clamps are designed in a manner that allows tensile stresses to exceed the yield strength of the material during normal installation (meaning that the tensile stresses are so high that the clamp permanently changes shape during installation, through a process known as "necking"). The clamps are designed in such a way that the tensile stresses.

130.     Chlorides are one of the most abundant compounds on the planet. They are routinely found in potable water, solder flux, masonry materials, concrete curing accelerants, perspiration, flame retardants, and numerous other materials routinely encountered in building construction. The presence of chlorides is (or should have been) reasonably anticipated and accounted for in the design & manufacture of PEX Clamps.

131.     NIBCO acknowledges that liquid and paste fluxes for soldering applications of copper and copper-alloy fittings are corrosive and that they contain chlorides of zinc and ammonia. Additionally, NIBCO provides step-by-step brazing instructions to the installer.

132.     These instructions specify the application of flux. The final step requires that the finished brazed assembly be wiped with a rag until all flux is removed. NIBCO fails to warn the installer against allowing chloride-rich flux to come into contact with the stainless steel PEX Clamp.

133.     NIBCO knows or should have known that it is impossible to completely remove all traces of chloride-rich flux, and that by wiping the flux with a rag it is likely that the chloride-rich flux will be smeared onto the adjacent stainless steel PEX Clamps.

134.     NIBCO reached a settlement in a nationwide class action case that was approved on or about October 2018 in the Kimberly Cole v. NIBCO, Inc. matter. However, Plaintiffs were excluded from this settlement:

> Excluded from the Settlement Class are Occupant Persons with respect to residential structures constructed by D.R. Horton, Inc.-Birmingham (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Dupree Plumbing Co. Inc.) and which are located in the following cities in **Alabama: Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly; Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Pratville; Springville; Trussville; and Tuscaloosa**. Also excluded from the Settlement Class are Occupant Persons with respect to residential structures constructed by Continental Homes of Texas, L.P. (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Christianson Air Conditioning and Plumbing, LLC) **and which are located in the following cities in Texas: Boerne; Cibolo; Converse; Live Oak; Medina County; New Braunfels; Royse City; San Antonio; San Marcos; Schertz; Sequin; and Universal City**. A list of such residential structures in Alabama and Texas covered by this exclusion will be provided to the Settlement Administrator and made available on the Settlement Website. Also excluded from the Settlement Class are D.R. Horton, Inc.-Birmingham, Dupree Plumbing Co. Inc., Continental Homes of Texas, L.P., and Christianson Air Conditioning and Plumbing, LLC, solely with respect to the structures identified in that list.

See PEX Settlement Website (*Kimberly Cole* v. NIBCO, et al).[2]

### Tolling of the Statute of Limitations/Fraudulent Concealment

135.     Any applicable statute of limitations has been tolled by NIBCO's knowing

---

[2] http://www.pexsystemsettlement.com/home  (Last Accessed January 13, 2020).

and active concealment and denial of the facts alleged herein.

136.     Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Defective PEX Products until shortly before this class action litigation was commenced.   Certain Plaintiffs even sent samples of PEX components and parts to NIBCO but were told there were no problems or defects.

137.     NIBCO was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of NIBCO's defective PEX Tubing, PEX Clamps, and/or PEX Fittings, and the fact that they suffer from the PEX Product Defects that can cause them to fail.

138.     NIBCO has failed to comply with this duty to Plaintiffs and the Class.

139.     As a result of the active concealment by NIBCO, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled

140.     NIBCO litigated various putative class action cases from approximately 2012-2018 that resulted in a nationwide settlement excluding Plaintiffs and other class members similarly situated.   *Kimberly Cole, et al.*, on behalf of themselves and all others similarly situated, v. *NIBCO, Inc.*, No. 13-cv-7871 (D. N.J.); *Meadow, et al. v. NIBCO Inc.*, No. 3:15-1124 (M.D. Tenn).

141.     The Nationwide Settlement Agreement is dated October 26, 2018 and the United States District Court for the District of New Jersey entered an Order Granting Final Approval to Class Action Settlement and Certifying Settlement Class on or about April 11, 2019.   *Kimberly Cole, et al.*, on behalf of themselves and all others similarly situated, v. *NIBCO, Inc.*, No. 13-cv-7871 (D. N.J.) (Doc. 227).

142.    Plaintiffs and other class members are excluded from this Agreement.

## V.    CLASS ALLEGATIONS

143.    As stated above, this action is brought on behalf of Plaintiffs, individually and as a class action, pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and/or 23(b)(3).

144.    This class action meets all requirements under the U.S. Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332, 1453, and 1711–1715.

145.    Nothing in Texas, Alabama, or federal law prohibits the filing of this case.

146.    Specifically, pursuant to Fed. R. Civ. P. 23(c)(5) the putative proposed Class consists of class members that fall within two subclasses in Texas and Alabama:

### The Texas Subclass

All persons that own or have owned at any time since January 1, 2009, a residential or commercial structure in residing in **Boerne; Cibolo; Converse; Live Oak; Medina County; New Braunfels; Royse City; San Antonio; San Marcos; Schertz; Sequin; and Universal City** that contains or contained NIBCO's PEX Products, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures that were excluded from the PEX nationwide settlement in *Cole v. NIBCO, et al.*

### The Alabama Subclass

All persons that own or have owned at any time since January 1, 2009, a residential or commercial structure in Alabama in **Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly; Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Pratville; Springville; Trussville; and Tuscaloosa** that contains or contained NIBCO's PEX Products, including their spouses, joint

owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns; as well as all persons who have standing and are entitled to assert a claim on behalf of any such persons, such as but not limited to a builder, contractor, distributor, seller, subrogated insurance carrier, or other person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for leaks of the PEX Products with respect to such current or former owners of such structures that were excluded from the PEX nationwide settlement in *Cole v. NIBCO, et al.*

147.    The above-listed Texas and/or Alabama subclass definitions may be amended prior to class certification.

148.    Pursuant to Fed. R. Civ. P. 23(c)(1), Plaintiffs respectfully request that the Court issue a class certification order "at an early practicable time" and determine that this action can be certified as a class action.

149.     Pursuant to Fed. R. Civ. P. 23(c)(b), Plaintiffs respectfully ask the Court to issue an order that defines the class, class claims, issues, and/or defenses, as well as the appointment of the undersigned counsel as class counsel.

150.    The rights of each member of the Texas and Alabama Subclasses (collectively the Class) were violated in a similar fashion based upon Defendant's products, representations, acts, omissions, and/or other conduct.

151.    For the factual and legal reasons explained above and below, a class action lawsuit is a superior legal mechanism to adjudicate Plaintiffs and class members' claims.

152.    First, not having a class action risks inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for any parties opposing the class.  Fed. R. Civ. P. 23(b)(1).  Alternatively, adjudications with respect to individual class members only would impair and impede

their ability to protect their interests.

153.    This action has been brought and may be properly maintained as a class action for the following reasons:

**A.    Numerosity**

154.    Pursuant to Fed. R. Civ. P. (a)(1), Members of the Class (Texas and Alabama Subclasses collectively and separately) are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe that the proposed Class contains hundreds and perhaps thousands of individuals or entities that own properties with Defendant's PEX Products in Texas and Alabama.

155.    The Class (Texas and Alabama Subclasses collectively and separately) is therefore sufficiently numerous to make joinder impracticable, if not impossible. The precise numbers of Class members in each subclass are unknown at this time.

**B.    Existence and Predominance of Commons Questions of Fact and Law**

156.    Pursuant to Fed. R. Civ. P. 23(a)(2), common questions of law and fact exist as to Plaintiffs' respective claims as well all members of the Class (Texas and Alabama Subclasses collectively and separately) similarly situated.

157.    These questions predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

> i.    Whether Defendant's PEX Tubing, Fittings and/or Clamps were defectively designed and/or manufactured for their intended purpose;

ii.      Whether Defendant's PEX Tubing, Fittings and/or Clamps were fit for their intended purpose and/or were merchantable;

iii.      Whether Defendant failed to warn consumers in Texas and Alabama that its PEX Tubing, Fittings and/or Clamps were not properly tested during the design and development process;

iv.      Whether Defendant made fraudulent, false, deceptive, and/or misleading statements in connection with the sale of its PEX Tubing, Fittings and/or Clamps in its product literature;

v.      Whether Defendant failed to warn about or omitted material information when it sold its PEX Tubing, Fittings and/or Clamps;

vi.      Whether Defendant exercised reasonable care in the design, manufacture, and testing of its PEX Tubing, Fittings and/or Clamps;

vii.      Whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of its PEX Tubing, Fittings and/or Clamps;

viii.      Whether Defendant breached its duty to Plaintiffs and the Class by designing, manufacturing, advertising, and selling to Plaintiffs and the Class defective PEX Tubing, Fittings and/or Clamps;

ix.      Whether Defendant's PEX Tubing, Fittings and/or Clamps are progressively deteriorating at an accelerated rate;

x.      Whether Defendant's PEX Tubing, Fittings and/or Clamps fail prematurely;

xi.      Whether Defendant knowingly sold or allowed its PEX Tubing, Fittings and/or Clamps to be distributed after it knew the PEX Tubing, Fittings and/or Clamps were failing at an increased rate;

xii.      Whether Defendant knew or should have known of the

defective nature of its PEX Tubing, Fittings and/or Clamps;

xiii.    Whether Plaintiffs and the Class are entitled to relief under Defendant's express warranties;

xiv.    Whether Defendant breached its contracts and warranties;

xv.    Whether Defendant breached the PEX express warranty;

xvi.    The appropriate measurement of restitution and/or measure of damages to award to Plaintiffs and members of the Class; and

xvii.    Whether the Defendant should be required to notify all Class members in Texas and Alabama about defects in its PEX Products.

158.    Pursuant to Fed. R. Civ. P. 23(b)(3), Plaintiffs respect that the Court find that common questions of law and fact exist as to all members of the Class (Texas and Alabama Subclasses collectively and separately) and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**C.    Typicality**

159.    Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the claims of the Texas and Alabama Subclasses since Plaintiffs and all members of the Class own Defendant's defective PEX Products.   Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries arising out of Defendant's wrongful conduct by, *inter alia,* paying more for their homes and/or PEX Products than they otherwise would have had they been aware of their defects.

160.    Had this material information been disclosed to Plaintiffs and Class members, they would not have purchased the PEX Products and/or their respective homes

(or, at a minimum, would have paid substantially less for them).

161.    Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members similarly situated.

**D.    Adequacy**

162.    Pursuant to Fed. R. Civ. P. 23(a)(4), Plaintiffs are adequate representatives of the Class (in both Texas and Alabama respectively) because their interests do not conflict with the interests of the Class that they seeks to represent; they have retained counsel competent and highly experienced in complex class action litigation and they intend to prosecute this action vigorously, diligently, competently, and thoroughly.

163.    Therefore, the interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

**E.    Ascertainability**

164.    Class members are readily ascertainable and can be identified by NIBCO's records and/or the nationwide class action PEX settlement website, or other appropriate means through discovery or further investigation.

**VI.    <u>CAUSES OF ACTION</u>**

**<u>COUNT I</u>**
**BREACH OF EXPRESS WARRANTY**
**(Texas and Alabama)**

165.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

166.    Plaintiffs bring this cause of action on behalf of themselves and on behalf

of the members of the Class against Defendant.

167.    Under both Texas and Alabama law, NIBCO's PEX products, system, and/or components are a form of goods under the Uniform Commercial Code (UCC).

168.    Therefore, Plaintiffs' and the Class' breach of express warranty claim is governed by its terms as well as provisions in the Uniform Commercial Code.

169.    NIBCO's PEX Products contained an express warranty with every purchase, Exhibit A.  NIBCO warranted that the PEX Products would be free from defects in materials and workmanship and such warranty became part of the basis of the transaction between Plaintiffs and the Class and Defendant.

170.    Defendant's express warranty states its PEX Products will be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor and when installed along with NIBCO PEX fittings and NIBCO valves and installation accessories.

171.    NIBCO's express warranty states its PEX Tubing will be free from defects in materials and workmanship for a period of ten (10) years from the date of purchase if installed by a licensed professional contractor.

172.    NIBCO's expressly warrants that if a consumer's PEX Products are defective as defined in the warranty, NIBCO will replace them free of charge.

173.    Plaintiffs and the Class complied with the terms of Defendant's express warranty, including any and all conditions precedent and all obligations owed to NIBCO related to installation of the PEX Components.

174.    Contrary to the terms of the express warranty, Defendant has failed to replace the defective PEX Products purchased by Plaintiffs and the Class.

175.    As NIBCO took no action to cure said breaches of warranties, Plaintiffs and the Class took corrective action at their own cost and expense so as to mitigate any further damage related to the failure of the PEX Products.

176.    As a result of Defendant's breach, Plaintiffs and Class members have suffered an ascertainable loss in the form of direct monetary losses because Defendant has forced Plaintiffs to pay for repairs, damage in their homes, piping and plumbing, and/or the replacement of the defective PEX Products.

177.    Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct.

178.    In addition, Defendant was put on notice of the defect because it had knowledge of the existence of the PEX Product Defects at all relevant times.

179.    As stated above, Plaintiffs were provided the PEX Limited Warranty at or about the time they purchased their homes as part of the home purchasing process. Plaintiffs read and relied on the representations stated in the warranty as a basis for their respective bargains.    This similarly applies to other Class members.

180.    The Texas and Alabama Subclass members each comprise an identifiable sub class, which NIBCO knew or had reason to know were likely to suffer damages as a result of its conduct, including property damage, including leaking and water damage, beyond

that sustained only to the defective NIBCO PEX Products.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Texas and Alabama)

181.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

182.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against NIBCO.

183.    At all times mentioned herein, Defendant manufactured and/or supplied the PEX Products, and prior to the time the PEX products were purchased by Plaintiffs and the Class, Defendant impliedly warranted to Plaintiffs, Plaintiffs' agents, and other class members similarly situated that the PEX Products were of merchantable quality and fit for the use for which they were intended.

184.    Plaintiffs relied on the skill and judgment of Defendant on their design, sale, and manufacture of PEX Products.

185.    The PEX Products were unfit for their intended use and were not of merchantable quality, as warranted by Defendant, but instead contained the PEX Product Defects. Specifically, and as a result of such defects, the PEX Tubing is predisposed to premature oxidative failure and creep rupture, the PEX Fittings are predisposed to prematurely fail as a result of dezincification corrosion, and the PEX Clamps are predisposed to prematurely fail as a result of chloride-induced stress corrosion cracking. These defects cause the PEX Products to fail to perform when put to their intended use.

186.    Defendant breached the implied warranty of merchantability, as the PEX Products were not of a merchantable quality due to the PEX Product Defects.

187.    The Texas and Alabama Subclass members each comprise an identifiable subclass, to which NIBCO knew or had reason to know were likely to suffer damages as a result of its conduct, including property damage, including leaking and water damage, beyond that sustained only to the defective NIBCO PEX Products.

188.    As a result of Defendant's breach, Plaintiffs and Class members have suffered an ascertainable loss in the form of direct monetary losses because Defendant has forced Plaintiffs to pay for repairs, damage in their homes, piping and plumbing, and/or the replacement of the defective PEX Products.

**COUNT III**
**TEXAS PRODUCTS LIABILITY ACT**
**(TEX. CIV. PRAC. & REM. CODE ANN. § 82.001, *et seq.*)**
**(Plaintiffs Individually and on Behalf of the Texas Subclass)**

189.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

190.    Plaintiffs Janice Williams and Antonio Rodriguez, Jr. bring this cause of action on behalf of themselves and of the members in the Texas Subclass against NIBCO.

191.    NIBCO designed, manufactured, assembled, distributed, marketed and sold NIBCO PEX Products, including the NIBCO PEX Products that were installed in the Plaintiffs and other class members' respective homes.

192.    The NIBCO PEX Products were expected to, and did, reach Plaintiffs'

homes without substantial change in the conditions in which they were designed, manufactured, assembled, distributed, marketed and sold by NIBCO.

193.    The NIBCO PEX Products, as designed, manufactured, assembled, distributed, marketed and sold by NIBCO were in a defective condition at the time they were sold to Plaintiffs, although the latent nature of the defect did not manifest until later.

194.    The NIBCO PEX Products were defectively designed and/or manufactured for the reasons set forth above.

195.    The NIBCO PEX Products were defective for the following reasons: (1) they were not reasonably safe for ordinary and intended use; (2) NIBCO failed to provide Plaintiffs and other Texas Subclass members with adequate and sufficient warnings regarding the known and foreseeable risks and dangers inherent in NIBCO PEX Products; and (3) the design, methods of manufacture, and testing of NIBCO PEX Products were inadequate and produced defective products.

196.    Plaintiffs and/or others reasonably expected users of NIBCO PEX Products could not, by the exercise of reasonable care, have discovered the defects and/or deficiencies posed by the NIBCO PEX Products.

197.    The Texas Subclass members comprise an identifiable sub class, which NIBCO knew or had reason to know were likely to suffer damages as a result of its conduct, including property damage, including leaking and water damage, beyond that sustained only to the defective NIBCO PEX Products.

198.    As a result of Defendant's acts, omissions, representations and/or conduct,

Plaintiffs and Class members have suffered an ascertainable loss in the form of direct monetary losses because Defendant has forced Plaintiffs to pay for repairs, damage in their homes, piping and plumbing, and/or the replacement of the defective PEX Products.

## COUNT IV
## NEGLIGENCE: FAILURE TO WARN
### (Texas and Alabama)

199.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

200.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of class members excluded from the Nationwide Class against Defendant.

201.    NIBCO had a duty to exercise reasonable care in the design, manufacture, and information disclosed to homeowners such as Plaintiffs and class members.

202.    NIBCO owed Plaintiffs and Class members a duty to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the PEX Products.

203.    NIBCO breached their duty of care and failed to act as a reasonably prudent company would with respect to its PEX Products.

204.    As a direct and proximate result of the defective condition of the NIBCO PEX Products, Plaintiffs and other Texas Subclass members suffered property damage and other incidental and consequential damages.

205.    NIBCO designed and manufactured the PEX Products and sold or distributed the PEX Products to Plaintiffs and other class members similarly situated.

206.    The PEX Products were defective in their design and were defective when they left NIBCO's possession or control.   However, such defects were unknown to Plaintiffs and class members similarly situated at all material times.

207.    Alternatively, NIBCO's PEX Products were defectively manufactured and posed a substantial likelihood of harm when they left NIBCO's possession or control.

208.    NIBCO knew, or should have known, that the PEX Products contained an unreasonable defect in their material composition.

209.    NIBCO knew or should have known that the PEX Products were highly susceptible to failure under expected installation conditions and ordinary use, and that consumers would not replace their PEX Products without an instruction to do so.

210.    NIBCO failed to inform Plaintiffs and the Class as to the PEX Products' susceptibility to failure, including leaking and water damage that could result.

211.     NIBCO failed to warn consumers that it was necessary to replace the PEX Products, even if the PEX Products had not yet failed.

212.    The PEX Products are defective and unreasonably dangerous due to inadequate warnings, inadequate disclosures, inadequate inspection and testing, and inadequate reporting regarding the results of quality control testing, or lack thereof.

213.    The failure of the PEX Products in Plaintiffs' and the Class members' residential and commercial properties was caused by poor and improper workmanship and manufacture, negligence, and lack of reasonable and ordinary care by NIBCO.

214.    After being notified of the foregoing breaches and problems, NIBCO took

no meaningful action to cure its breaches or make Plaintiffs and class members whole.

215.    This required Plaintiffs and the Class to take corrective action at their own cost and expense to avoid continued failure of the PEX Products, as well as further damage to their homes, business and personal property.

216.    Defendant failed to warn of the potential hazards associated with the use of PEX Products, including leaking and subsequent water damage.

217.    NIBCO thus negligently and unreasonably failed to issue a notice of the hazards or recall regarding the hazard.

218.    The Texas and Alabama Subclass members each comprise an identifiable subclass, which NIBCO knew or had reason to know were likely to suffer damages as a result of its conduct, including property damage, including leaking and water damage, beyond that sustained only to the defective NIBCO PEX Products.

219.    As a result of Defendant's acts, omissions, representations and/or conduct, Plaintiffs and Class members have suffered an ascertainable loss in the form of direct monetary losses because Defendant has forced Plaintiffs to pay for repairs, damage in their homes, piping and plumbing, and/or the replacement of the defective PEX Products.

## COUNT V
## VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT
## TEX. BUS. & COM. CODE §§ 17.41–17.63, *et seq*. (DTPA)
## (Plaintiffs Individually and on Behalf of the Texas Subclass)

220.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

221.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of class members in parts of Texas excluded from the nationwide class settlement.

222.     Plaintiffs bring this claim pursuant to the Texas Deceptive Trade Practices Consumer Protection Act, TEX. BUS. & COM. CODE §§ 17.41–17.63, *et seq*. (DTPA).

223.     The purpose of the DTPA is to protect consumers from false, misleading, or deceptive business practices, unconscionable actions, and breaches of warranty. TEX. BUS. & COM. CODE § 17.44(a).

224.     A claim under the DTPA may be brought in conjunction with many common law causes of action, including breach of warranty, misrepresentation, and negligence. *PPG Indus. v. JMB/Houston Ctrs. Partners*, 146 S.W.3d 79, 89 (Tex. 2004).

225.     Plaintiffs and class members are considered to be "consumer(s)" as defined in § 17.45(4) of the DTPA.

226.     NIBCO's PEX products and components are "goods" under the DTPA as defined in § 17.45(1).

227.     Plaintiffs and other class members were provided, read, and relied on the PEX Limited Warranty described above.

228.     NIBCO's misrepresentations stated above constitute false, misleading, or deceptive business practices, unconscionable actions, and breaches of warranty in violation of the DTPA.

229.     NIBCO's violations of the DTPA include the following sections:

(a)   <u>TEX. BUS. & COM. CODE § 17.50(a)(1)</u> – the use or employment of false, misleading, or deceptive acts or practices that were detrimentally relied upon by Plaintiff as defined in:

    (i) <u>TEX. BUS. & COM. CODE § 17.46(b)(5)</u> – representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not.

    (ii) <u>TEX. BUS. & COM. CODE § 17.46(b)(7)</u> – representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

    (iii) <u>TEX. BUS. & COM. CODE § 17.46(b)(9)</u> – advertising goods or services with intent not to sell them as advertised.

    (iv) <u>TEX. BUS. & COM. CODE § 17.46(b)(24)</u> – failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

(b)   <u>TEX. BUS. & COM. CODE § 17.50(a)(2)</u> – breach of warranties, as defined in TEX. BUS. & COM. CODE §§ 2.313-2.314.

230.   The limited remedies in NIBCO's warranty failed its essential purpose and deprived Plaintiffs of the substantial value of the bargain because Defendant did not correct the defective product within a reasonable time. TEX. BUS. & COM. CODE § 2.719.

231.   NIBCO's deceptive and unfair practices took place in the course of trade in commerce within the State of Texas.

232.   NIBCO's deceptive and unfair practices were a direct and producing cause of Plaintiffs and class members' injuries and damages.

233.   Plaintiffs and class members have suffered injuries and actual damages, including financial and out-of-pocket expenses.

## COUNT VI
## VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT
### Ala. Code 1975 § 8-19-1 *et seq*. (ADTPA)
### (Plaintiffs Individually and on Behalf of the Alabama Subclass)

234.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

235.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of class members in parts of Alabama excluded from the nationwide class settlement.

236.    Plaintiffs bring this claim pursuant to the Alabama Deceptive Trade Practices Consumer Protection Act (ADTPA), Ala. Code 1975 § 8-19-1 *et seq*.

237.    The purpose of the DTPA is to implement a "strong and effective consumer protection program in the interest of both the consuming public and legitimate businessperson."  Ala. Code 1975 § 8-19-2 *et seq*.

238.    Plaintiffs and class members in parts of Alabama are considered to be "consumer(s)" as defined in Ala. Code 1975 § 8-19-3(2).

239.    NIBCO's PEX products and components are "goods" under the DTPA as defined in Ala. Code 1975 § 8-19-3(3).

240.    Plaintiffs and other class members were provided, read, and relied on the PEX Limited Warranty described above.

241.    NIBCO's misrepresentations stated above constitute false, misleading, or deceptive business practices, unconscionable actions, and breaches of warranty in violation of the DTPA.

242.    NIBCO's violations of the ADTPA are found in <u>Ala. Code 1975 § 8-19-5</u>:

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

(6) Representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased, provided that this subdivision shall not apply to new goods which have been reconditioned, reclaimed, or repaired and such fact is disclosed to the purchaser;

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(13) Knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service; and

(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

243.    The limited remedies in NIBCO's warranty failed its essential purpose and deprived Plaintiffs of the substantial value of the bargain because Defendant did not correct the defective product within a reasonable time.

244.    NIBCO's deceptive and unfair practices took place in the course of trade in commerce within the State of Alabama.

245.    NIBCO's deceptive and unfair practices were a direct, proximate and/or producing cause of Plaintiffs and class members' injuries and damages.

246.    The ADTPA's prohibition on class actions does not apply in this federal class action, rather, Fed. R. Civ. P. 23 controls. *Lisk v. Lumber One Wood Preserving LLC*, 792 1331, 1337 (11th Cir. 2015).

247.    Plaintiffs and class members have suffered injuries and actual damages,

including financial and out-of-pocket expenses.

## VII.   <u>DAMAGES</u>

248.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

249.    As a result of NIBCO's actions, omissions, representations, and/or other conduct listed above, Plaintiffs and other class members have suffered damage as a result of the PEX products, components, and/or systems installed in their home.

250.    Plaintiffs and the Class have been caused to suffer losses and damages, including the cost of repairing and replacing the PEX Products, interruption of their businesses and home life, damage to their homes, businesses and personal property due to leakage, and other incidental expenses associated with the failure of NIBCO's PEX Products, all of which damages should have been reasonably foreseeable by NIBCO.

251.    Plaintiffs and the Class will likely suffer future leaks and damages as well.

252.    Plaintiffs seek all damages available at law or equity available to them including: (a) actual damages; (b) consequential damages; (c) enforcement of warranties, including a replumb and/or replacement of all PEX parts, components, and/or systems found to be defective; (d) exemplary damages; (e) all other damages and relief available at law or equity, including a replumb of Plaintiffs' homes and/or replacement of PEX products in the homes if necessary; (f) attorney's fees; and (g) pre/post judgment-interest.

253.    Collateral source(s) or other reimbursement do not bar Plaintiffs' recovery.

## VIII.  <u>JURY DEMAND</u>

254.    Plaintiffs, on behalf of themselves and the class, demand a trial by jury on all

issues so triable.   Plaintiffs tender the requisite jury fee upon the filing of this Complaint.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for and request, on behalf of themselves and other similarly situated class members in Texas and Alabama, the following relief:

A. That citation be issued and for NIBCO appear and answer this lawsuit;

B. That the Court determine that the claims alleged herein may be maintained as a class action under Fed. R. Civ. P. 23(a), (b)(2), and/or (b)(3);

C. That the Court issue a class certification order certifying the Texas and Alabama Subclasses and designating the undersigned Plaintiffs' counsel and firms as counsel for the Class;

D. That the Court conduct a full trial on the merits.

E. Alternatively (if appropriate and in best interests of class members and if negotiated, agreed to, and reached by Plaintiffs and Defendant), that the Court approve a class action settlement consistent with Fed. R. Civ. P. 23;

F. That after a trial the Court award damages including all actual, general, special, incidental, statutory, treble or other multiple, punitive and consequential damages to which Plaintiffs and Class members are entitled;

G. That the Court award pre-judgment and post-judgment interest on such monetary relief;

H. That the Court award reasonable attorneys' fees and costs;

I. That the Court award any further relief and issue orders that are necessary. This may include, without limitation, any remediation, inspection, replumbing, replacement, and/or other measures available at law or equity.

Dated: January 14, 2020

Respectfully submitted,

/s/ George M. Fleming

**FLEMING, NOLEN & JEZ, LLP**
George M. Fleming
State Bar No. 07123000
Gregory D. Brown
State Bar No. 24078266
2800 Post Oak Blvd., Suite 4000
Houston, TX 77056-6109
Telephone: (713) 621-7944
Facsimile: (713) 621-9638
Email: George_fleming@fleming-law.com
Email: gregory_brown@fleming-law.com

**SEARS CRAWFORD LLP**
Ross Sears
State Bar No. 17960011
1200 Rothwell St
Houston, TX 77002
(713) 223-3333.
ross@searscrawford.com

*Counsel for Plaintiffs*