## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**JANICE WILLIAMS; ANTONIO RODRIGUEZ, JR.; PRINCESS DIANE PIPPEN; DIANE ROBINSON; and MAYA ROBINSON, Individually and on Behalf of All Similarly Situated,**

      *Plaintiffs*,

**v.**                                                    **Case No. SA-20-CV-0048-JKP-RBF**

**NIBCO INC.,**

      *Defendant*.

### MEMORANDUM OPINION AND ORDER

Before the Court is *Defendant NIBCO Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint* (ECF No. 14). With Plaintiffs' filed response (ECF No. 18) and Defendant's reply brief (ECF No. 20), the motion is ripe for ruling. After considering the motion, briefing, and applicable law, the Court denies the motion in its entirety.

### I. BACKGROUND[1]

In April 2020, Plaintiffs filed a First Amended Class Action Complaint (ECF No. 13) in response to a prior motion to dismiss. In this class action diversity case, Plaintiffs represent homeowners with PEX products installed in their homes in certain areas in Texas and Alabama. *First Am. Class Action Compl.* ¶ 6. They sue NIBCO, Inc., a corporation that manufactures, markets, and distributes PEX products for use in residences. *Id*. ¶¶ 45-48. This case involves a Texas subclass (with putative class representatives Janice Williams and Antonio Rodriguez, Jr.) and an Alabama subclass (with putative class representatives Princess Diane Pippen and the Robinsons

---

[1] The background is taken from Plaintiffs' allegations, which the Court views in a light most favorable to Plaintiffs consistent with the standards for motions to dismiss.

(Diane and Maya)) of homeowners who have suffered injuries and damages to their homes and property due to PEX products. *Id.* ¶¶ 2-4, 11, 19, 26, and 34. Both subclasses were "intentionally excluded from a previous nationwide class settlement in which they had been putative class members." *Id.* ¶ 5.

Plaintiffs assert the following claims under both Texas and Alabama law: (1) breach of express warranty (¶¶ 135-47), (2) breach of implied warranty of merchantability (¶¶ 148-54), (3) breach of implied warranty of fitness for a particular use (¶¶ 155-63), (4) negligent failure to warn (¶¶ 195-212), (5) negligent design (¶¶ 213-26), and (6) unjust enrichment (¶¶ 227-32). They also assert, violations of the Texas Products Liability Act (¶¶ 164-71), the Texas Deceptive Trade Practices Act ("DTPA") (¶¶ 172-81), and the Alabama Deceptive Trade Practices Act (¶¶ 182-94).

Defendant has moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (6). *See* Mot. at 1-20. Under Rule 12(b)(2), it argues that the Court lacks personal jurisdiction over claims asserted by the Alabama named plaintiffs. *See id.* at 4-7. It asserts a litany of other reasons why various claims fail to state a claim under Rule 12(b)(6), including being barred by applicable statute of limitations. *Id.* at 7-20. In their response (ECF No. 17), Plaintiffs disagree with each of Defendant's arguments and contentions. They maintain that they have adequately pleaded their claims and that neither personal jurisdiction nor any statute of limitations bars any claim. With respect to the limitations defense, they argue that Defendant ignores material facts and two dispositive equitable tolling principles. The motion to dismiss became ripe for ruling with Defendant's reply brief (ECF No. 20).

The Court thereafter issued a Phase One Scheduling Order (ECF No. 29) to set various deadlines, including an October 22, 2021 deadline for Plaintiffs to move for class certification. Recently, the Magistrate Judge assigned to this case, issued an Order (ECF No. 35) after conducting a status hearing in this case. Finding "that principles of judicial efficiency and the interests of

2

the putative class members merit entry of a stay," the Magistrate Judge stayed this action "at least until such time as the District Court rules on NIBCO's pending and ripe motion to dismiss." The Magistrate Judge further noted that, "[a]fter ruling on the motion, the District Court may determine that lifting the stay is appropriate or, instead, that the interests of the Court and putative class members are best served by further extending the stay." At the hearing before the Magistrate Judge, the named Plaintiffs in this action confirmed that the putative class here is effectively identical to a provisionally certified class in a related, but earlier-filed, case," *Matson v. NIBCO*, No. 5-19-CV-717-RBF (W.D. Tex. filed June 19, 2019).

## II. APPLICABLE LAW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *accord Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because jurisdiction in this case is based on diversity of citizenship, this generally means that the Court applies "Texas law," including its law regarding statutes of limitations. *Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017); *accord West v. Conrail*, 481 U.S. 35, 39 n.4 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980); *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989). In this case, however, the parties apply Alabama law to all Alabama claims and Texas law to the claims arising under Texas law. The Court has no reason to disagree with that approach and will proceed similarly.

"When reviewing issues of state law, federal courts look to the law of that state's highest court." *City of Alexandria v. Brown*, 740 F.3d 339, 351 (5th Cir. 2014); *accord Price v. City of San Antonio, Tex.*, 431 F.3d 890, 892 (5th Cir. 2005). Absent a final decision by the state's highest court that "'precisely' resolves the legal issue, federal courts "must make an *Erie* guess" to determine as best they can what the highest court would decide. *Martinez v. Walgreen Co.*, 935 F.3d

396, 398 (5th Cir. 2019) (citation omitted). When compelled to make an *Erie* guess, federal courts "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (citations and internal quotation marks omitted); *accord Price*, 431 F.3d at 893 n.5. The federal courts not only look to the intermediate state appellate decisions, but also to "the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Martinez*, 935 F.3d at 398 (citation omitted).

### III. MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2)

At the outset, the Court addresses the argument that it lacks personal jurisdiction over Defendant relative to the three named Alabama Plaintiffs and that it should thus dismiss their claims under Fed. R. Civ. P. 12(b)(2). The parties agree that general jurisdiction provides no basis for personal jurisdiction in this action. *See Mot.* at 4-5; *Resp.* at 5 n.4. They disagree as to specific jurisdiction and Plaintiffs focus on the putative class members of the Alabama subclass whereas Defendant focuses on the three named representative members of that subclass.

Plaintiffs have "the burden of establishing that the court has personal jurisdiction." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 (5th Cir. 2016). Although they have "the burden of demonstrating specific jurisdiction for each claim asserted against the nonresident defendant," they may carry that burden by making a prima facie showing when the Court limits itself to the pleadings. *Id*. at 211 & n.73. "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case . . . the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999) (quoted with approval in *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014) (per curiam)); *accord Luv N' care, Ltd. v. Insta-*

4

*Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (noting that the "court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction").

Whether there is specific jurisdiction over a nonresident defendant depends on "the relationship among the defendant, the forum, and the litigation." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). In other words, "specific" or "case-linked" jurisdiction depends on the connection "between the forum and the underlying controversy." *Walden*, 571 U.S. 283 n.6 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Because "the Texas long-arm statute extends as far as constitutional due process allows," this Court "may exercise personal jurisdiction over a nonresident defendant" so long as "the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Furthermore, "specific personal jurisdiction is a claim-specific inquiry," which means that when a plaintiff brings "multiple claims that arise out of different forum contacts of the defendant" the plaintiff "must establish specific jurisdiction for each claim." *Id.* (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)). The Fifth Circuit

> applies a three-step analysis for the specific jurisdiction inquiry:
>
> > (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton*, 768 F.3d at 433 (quoting *Seiferth*, 472 F.3d at 271). Plaintiffs have the burden to "establish the first two prongs," but once they do, the burden shifts to the Defendant for the third prong.

*Id.*

According to a leading commentator, personal jurisdiction has had minimal impact on class actions historically. W. Rubenstein, 2 *Newberg on Class Actions [hereinafter Newberg]* § 6.25 (5th ed. 2020) ("Personal jurisdiction is not . . . a particularly pressing component of class action practice."). Defendant, however, urges the Court to apply *Bristol-Myers Squibb Co. v. Superior Court of California*,137 S. Ct. 1773 (2017) to the facts in this putative class action. *See* Mot. at 6-7. While the commentator recognized that *Bristol-Myers* does not directly concern class actions, it may create more challenges in that context. 2 *Newberg* § 6.26. Indeed, while "[n]ationwide class actions filed against large national corporations in states that are not their homes have not raised significant personal jurisdiction challenges . . . [t]his is likely to change in wake of *Bristol-Myers*." *Id*. The commentator also recognized that the courts have not taken a uniform response to such challenges. *See id.*

Neither the Supreme Court nor the Fifth Circuit has addressed the application of *Bristol-Myers* in the class action context. But the Fifth Circuit has recognized that *Bristol-Myers* "left open how it would apply to federal courts or class actions" and that "courts have split on how *Bristol-Myers* applies to class actions brought in federal court." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 247 n.4 (5th Cir. 2020).

In a persuasive decision, the Seventh Circuit has declined to extend the case to class actions. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 443-48 (7th Cir. 2020), *cert. denied*, No. 20-510, 2021 WL 78484 (U.S. Jan. 11, 2021). "Before the Supreme Court's decision in *Bristol-Myers*, there was a general consensus that due process principles did not prohibit a plaintiff from seeking to represent a nationwide class in federal court, even if the federal court did not have general jurisdiction over the defendant." *Id*. at 445. Furthermore, in "cases relying on specific jurisdiction over the defendant, minimum contacts, purposeful availment, and relation to the claim were assessed only with

respect to the named plaintiffs." *Id*. And, even when "the links between the defendant and an out-of-state unnamed class member were confined to that person's home state, that did not destroy personal jurisdiction." *Id*. The Seventh Circuit expressly rejected the argument that class actions require "minimum contacts between all class members and the forum." *Id*. In doing so, it noted that "[d]ecades of case law show that this has not been the practice of the federal courts." *Id*.

*Mussat* distinguished *Bristol-Myers* because the case "did *not* involve a certified class action, but instead was brought under a different aggregation device," a coordinated mass action. *Id*. at 445-46. It further noted that, making a nationwide class action impossible as a practical matter "any time the defendant is not subject to general jurisdiction" would be "far from the routine application of personal-jurisdiction rules that *Bristol-Myers* said it was performing." *Id*. at 446.

Based on the reasoning and rationale set out in *Mussat*, this Court likewise declines to extend *Bristol-Myers* to the class action context. There are numerous reasons to distinguish that case from the class action allegations now before the Court. *See Jones v. Depuy Synthes Prod., Inc.*, 330 F.R.D. 298, 311 (N.D. Ala. 2018); *Sanchez v. Launch Tech. Workforce Sols.*, LLC, 297 F. Supp. 3d 1360, 1365 (N.D. Ga. 2018). Further, the Court agrees that *Bristol-Myers*' "straight-forward application . . . of settled principles of personal jurisdiction," 137 S. Ct. at 1783, was not intended to "create a sea of change in class action jurisprudence" that would result if the Court applied it to class action allegations, *see Jones*, 330 F.R.D. at 312.

The Supreme Court has recognized that permitting class action litigation serves multiple goals, such as "simplify[ing] litigation involving a large number of class members with similar claims," easing administration of such actions, and "preventing multiple suits." *Devlin v. Scardelletti*, 536 U.S. 1, 10-11 (2002). These goals justify treating class actions differently regarding requirements for diversity jurisdiction and "no reason" exists for why the same rationale would "not also apply for personal jurisdiction purposes." *Jones*, 330 F.R.D. at 312. Although this case

has not yet progressed to the class certification stage under Fed. R. Civ. P. 23, that rule "contains procedural safeguards" which "adequately protect" a defendant's due process rights. *See id*. When a defendant "must already come to this forum to litigate" claims of one plaintiff or subclass of plaintiffs, and potentially, the claims of another subclass, there appears to "be little jurisdictional unfairness in requiring [such defendant] to also come into the forum to litigate the claims of the putative . . . class." *Id*.

Nevertheless, as the Seventh Circuit recognized in the historical class action context, plaintiffs must establish personal jurisdiction for each named representative. If the Court limits itself to the allegations of the operative pleading, Plaintiffs have carried their burden to make a prima facie showing of personal jurisdiction. First, Defendant unquestionably has sufficient minimum contacts with Texas. It has two manufacturing and distribution centers in the state. There is also certainly no question as to whether the claims of the Texas subclass arise out of the Defendant's forum-related contacts. And, given those claims it is fair and reasonable to exercise personal jurisdiction for both subclasses. The issue that may preclude personal jurisdiction is whether the claims of the named Alabama Plaintiffs arise out of or results from Defendant's forum related contacts. Plaintiffs allege that Defendant "manufactured and advertised its PEX Products" in Texas and Alabama. *See* First Am. Class Action Compl. ¶ 44. They further allege that Defendant "manufactured, marketed, distributed, sold, and warranted the PEX Products, System, and Components throughout the United States, including the States of Texas and Alabama." *See id*. ¶ 47. Through those allegations, Plaintiffs carry their burden on that issue.

Defendant, however, has submitted a declaration placing some allegations in question. Through that filing, Defendant declares that it has neither manufactured nor distributed "PEX Tubing, Fittings, or Clamps" from either of its Texas manufacturing and distribution centers. The declaration does not address whether Defendant warranted products involved in the Alabama claims

through its Texas centers. While that may appear unlikely, it still appears to be an undisputed fact alleged by Plaintiffs that the Court must resolve in favor of finding personal jurisdiction over the warranty claims at this stage of the litigation. Thus, on that basis, Plaintiffs have carried their burden to make a prima facie showing of personal jurisdiction at least as to some claims.

Plaintiffs, furthermore, ask for an opportunity to conduct jurisdictional discovery "[i]f the Court is inclined to do anything but deny NIBCO's motion as to specific jurisdiction." Resp. at 2 n.2. In reply, Defendant opposes such discovery because Plaintiffs proffer no facts that they hope to develop that would affect the specific jurisdictional analysis. *See* Reply at 2 n.2.

Courts have "broad discretion in all discovery matters." *Paolino v. Argyll Equities, L.L.C.*, 401 F. Supp. 2d 712, 722 (W.D. Tex. 2005). And, when a "lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.* Conversely, a lack of clarity regarding personal jurisdiction may be remedied through appropriate jurisdictional discovery. While Defendant views this action as a clear case where personal jurisdiction is lacking with respect to the Alabama claims, the Court has found that Plaintiffs have carried their minimal burden regarding personal jurisdiction and at least some Alabama claims at this stage of the litigation. Although personal jurisdiction over Defendant undoubtedly exists with respect to the asserted Texas claims, it is not clearly resolved either way with respect to the Alabama Plaintiffs. This case, furthermore, has the added complexity of proceeding as a putative class action with two subclasses of plaintiffs. Consequently, at this stage, the Court sees no reason to deny Plaintiffs an opportunity to conduct discovery about the extent that asserted Alabama claims arise out of or results from Defendant's Texas contacts .

Of course, Defendant may decide to waive the issue of personal jurisdiction or continue to assert it. The Fifth Circuit has long recognized "that a non-resident defendant may participate in litigation without submitting to the court's jurisdiction so long as it maintains its objection to

personal jurisdiction." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 540 (5th Cir. 2019) (citing *PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001)).

Typically, a defendant invokes specific jurisdiction as a shield against being hauled into a distant court without adequate contacts to the forum. In fact, "the touchstone" for the "minimum contacts" inquiry "is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). While there may be a similar concern for putative plaintiffs of a class action, such concern of personal jurisdiction is not available to remedy through Fed. R. Civ. P. 12 until after class certification. *See Cruson*, 954 F.3d at 250. At this juncture, Defendant uses specific jurisdiction as a sword against named out-of-state plaintiffs despite being undeniably subject to personal jurisdiction as to Texas plaintiffs. While the historical framework of class action litigation does require personal jurisdiction with respect to each claim of each named plaintiff, such use of personal jurisdiction still appears somewhat inconsistent with underlying goals of class action litigation and potentially interferes with claims of putative out-of-state plaintiffs.

The Court notes, furthermore, that were it inclined to find a lack of specific jurisdiction over Defendant as to the named Alabama plaintiffs, there may be remedies available other than outright dismissal of the plaintiffs or their claims. The putative Alabama subclass would remain, so the named plaintiffs might simply be subsumed into the putative plaintiffs until the Court addresses class certification issues. Alternatively, perhaps the proper remedy would be to sever the Alabama plaintiffs pursuant to Fed. R. Civ. P. 21 and transfer their claims to a proper venue under 28 U.S.C. §§ 1404 or 1406. Additionally, were Plaintiffs to insist on keeping both subclasses

together, the remedy might be to transfer the entire action under § 1404 or § 1406. Many, if not all, of these issues appear better suited for decision after the Court decides certification issues.

Accordingly, absent a binding Supreme Court or Fifth Circuit decision extending *Bristol-Myers* to the class action context, or a persuasive opinion for doing so, this Court declines to extend it to that context. Further, the Court finds that the Alabama Plaintiffs have carried their burden to show personal jurisdiction over at least some claims at this stage of the litigation and, to the extent they have failed in that regard, the Court grants their request to conduct jurisdictional discovery. For these reasons, the Court denies the motion to dismiss to the extent it arises from Rule 12(b)(2).

## IV. STANDARDS FOR MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant seeks dismissal of Plaintiffs' assorted claims based on insufficient factual allegations, untimeliness, and other defenses. Under Rule 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009). Despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) "carries the burden of proof for dismissal." *Newton v.*

*Bank of Am., N.A.*, No. CV SA-19-CA-797-FB, 2019 WL 6048000, at *2 (W.D. Tex. Aug. 29, 2019). Courts, furthermore, may find conclusory statements insufficient to support dismissal under Rule 12(b)(6), especially when the movant disregards relevant portions of the operative pleading. *See #1 Fan Co., LLC v. Pepco Licensed Prod., Inc.*, No. SA-09-CA-1029-FB, 2011 WL 13269165, at *2 (W.D. Tex. Mar. 16, 2011).

> "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> > A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

Furthermore, when it "is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like," a defendant may rely on a statute of limitations defense to support dismissal under Rule 12(b)(6). *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). It has been long established that plaintiffs are "not required to anticipate or overcome affirmative defenses, such as expiration of the statute of limitations, in the complaint." *Nobre v. La. Dep't of Pub. Safety*, 935 F.3d 437, 442 (5th Cir. 2019). And even though, in this diversity case, state law supplies the applicable statutes of limitations, federal law supplies the pleading requirements, and it does not require plaintiffs to plead the discovery rule. *Colonial Penn Ins. Co. v. Mkt. Planners ins. Agency, Inc.*, 1 F.3d 374, 376 (5th Cir. 1993) (per curiam). "Rather, it is enough that the plaintiff plead sufficient facts to put the defendant on notice of the theories on which the complaint is based." *Levels v. Merlino*, 969 F. Supp. 2d 704, 721 (N.D. Tex. 2013) (accepting recommendation of Mag. J.); *accord Suter v. Univ. of Tex. at San Antonio*, 495 F. App'x 506, 510 (5th Cir. 2012) (per curiam).

Other defenses may likewise support dismissal under Rule 12(b)(6), but only when the operative "pleading conclusively establishes the affirmative defense." *Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. Feb. 12, 2013) (addressing res judicata defense). Notably, under Texas law, "the economic loss rule is not an affirmative defense." *Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 360 F. Supp. 3d 494, 517 n.21 (N.D. Tex. 2019) (citing *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867-68 (Tex. 2007)), *aff'd sub nom. Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804 (5th Cir. 2020). "[B]ecause the existence and amount of damages" are part of the plaintiff's cause of action, defendants are "not required to assert the economic loss rule as an affirmative defense." *Equistar Chems., L.P.*, 240 S.W.3d at 867-68. Instead, the economic loss doctrine is a "court-adopted rule for interpreting whether a

party is barred from seeking damages in an action alleging tort injuries resulting from a contract between the parties." *Golden Spread Coop., Inc.*, 360 F. Supp. 3d at 517 n.21 (quoting *Tarrant Cnty. Hosp. Dist. v. GE Automation Servs. Inc.*, 156 S.W.3d 885, 895 (Tex. App. – Fort Worth 2005, no pet.)). Whether to apply "the economic loss rule is a question of law for the court to decide." *Id*. at 517. And, although a defendant may raise the defense through a motion to dismiss under Rule 12(b)(6), the courts view it through the standards applicable to such motions.

The Court first addresses Defendant's limitations defense, before moving to other defenses and alleged pleading deficiencies.

## V. STATUTE OF LIMITATIONS

Defendant invokes the statute of limitations against all implied warranty claims. *See* Mot. at 9-11. Although the amended complaint does provide factual allegations that might support such a defense, application of the defense must be evident from the face of the pleading. Here, Plaintiffs specifically invoke two equitable tolling provisions as to all their claims even though they had no obligation to do so under federal law. *See First Am. Class Action Compl.* ¶¶ 107-16. Having reviewed the operative pleading, the limitations defense is not evident from the face of the pleading and dismissal on that basis is not proper. Accordingly, the Court denies the motion to dismiss to the extent Defendant relies on a statute-of-limitations defense.

## VI. ECONOMIC LOSS DOCTRINE

Defendant also asserts a second defense – the economic loss doctrine – against Plaintiffs' tort and product liability claims. *See* Mot. at 13-14. Plaintiffs oppose dismissal under this doctrine. *See* Resp. at 17-18. Each of the named Plaintiffs have alleged water damage to property and personal belongings. *First Am. Class Action Compl.* ¶¶ 11, 16, 18-19, 23, 25-26,  29-30, 33-34, 38, 42. The operative complaint also alleges that when "NIBCO's PEX parts and components fail, that failure leads to the permeation, leaking, and/or release of water throughout a home" and "can cause

significant damage to surrounding property." *Id.* ¶ 61.

This Court has previously considered the doctrine in another case involving Defendant. *See Gehan Homes, Ltd. v. NIBCO Inc.*, No. 5:19-CV-1478-JKP, 2020 WL 5110707, at *7 (W.D. Tex. Aug. 31, 2020). And, like the operative complaint in that case, the amended complaint in this case "does not conclusively show the applicability of the economic loss doctrine and the Court cannot find that the doctrine applies merely on the allegations in this case." *See id.* Although Defendant stresses that it is not moving to dismiss any claim based on personal property damage, *see* Mot. at 13 n.6, to obtain a Rule 12(b)(6) dismissal on an asserted defense requires that the operative complaint conclusively establish the defense. Given alleged damages to Plaintiffs' property and personal property, the defense has not been so established. And Defendant's attempted partial dismissal does not change that. Accordingly, the Court denies the motion to dismiss to the extent Defendant relies on the economic loss doctrine.

## VII. MENTAL ANGUISH

Defendant also argues that Plaintiffs' vague and conclusory claims for mental anguish are not cognizable under Texas or Alabama law. Mot. at 14-15. Plaintiffs counter that, because both states require evidentiary proof of damages for mental anguish, it is too early to resolve the issue. Resp. at 19.

Defendant attempts to limit mental anguish too restrictively under Texas law. In determining that "mental anguish based solely on negligent property damage is not compensable as a matter of law," the Texas Supreme Court set out various circumstances and claims where "mental anguish has traditionally been compensable under Texas or prevailing American law," but concluded that negligent property damage "falls outside [those] types of cases." *City of Tyler v. Likes*, 962 S.W.2d 489, 496-97 (Tex. 1997). One such circumstance mentioned in *Likes*, but not mentioned by Defendant, is the "knowing violations of certain statutes such as the Deceptive Trade Practices Act."

*See id.* at 495. And this case, of course, includes a claim under the Texas DTPA.

Similarly, although "Alabama law does not permit recovery of mental-anguish damages based on a claim of simple negligence where the negligent act or omission results in mere injury to property," *Ex parte Grand Manor, Inc.*, 778 So. 2d 173, 180 (Ala. 2000), Plaintiffs in this class action assert more than a claim of simple negligence. The other Alabama case cited by Defendant, *Wal-Mart Stores, Inc. v. Bowers*, 752 So. 2d 1201 (Ala. 1999), also focused only on a claim for negligence. While that case clearly holds that damages for mental anguish is not available for a negligence claim involving damage only to property, it did not hold that such damages were una-vailable for the breach of warranty claim at issue. *See* 752 So. 2d at 1203-05. Nor does the case preclude damages for mental anguish for other types of claims. Defendant has not convinced the Court that Alabama law precludes damages for mental anguish on the claims asserted under Ala-bama law in this case. The Court thus denies the motion to the extent Defendant seeks to dismiss claims for mental anguish.

## VIII. REQUIRED NOTICE

Defendant argues that the Alabama Plaintiffs have failed to allege sufficient facts to estab-lish that they notified it of any alleged breach or provided a chance to cure before resorting to litigation. Mot. at 8-9. Plaintiffs counter that Defendant disregards their allegations that they pro-vided notice by notifying their homebuilder or plumber. Resp. at 12. Indeed, the operative pleading does allege that the Alabama Plaintiffs provided notice through the builder or plumber. *See First Am. Class Action Compl.* ¶¶ 32, 41. Furthermore, all Plaintiffs have alleged compliance with "any and all conditions precedent." *See id.* ¶ 142. In at least some instances, notice may be provided indirectly through the direct seller. *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1285 (M.D. Ala. 2001). "Affirmatively pleading notice is critical to the stating of a claim for breach of warranty under Alabama law." *Fowler v. Goodman Mfg. Co. LP*, No. 2:14-CV-968-RDP, 2014 WL

7048581, at *5 (N.D. Ala. Dec. 12, 2014) (citation omitted). Although Defendant disagrees with the sufficiency of the alleged notice, at this early stage of the litigation, the Court looks only to whether the Plaintiffs affirmatively alleged notice. In this case, Plaintiffs' affirmative statement that notice was provided is enough to survive the motion to dismiss. Accordingly, the Court denies the motion to the extent Defendant seeks dismissal due to a lack of required notice.

## IX. EXPRESS WARRANTY CLAIM

With respect to Plaintiffs' express warranty claim, Defendant argues that the alleged warranty does not cover the alleged design defect. *See* Mot. at 7-8. Plaintiffs disagree with the scope of the warranty and, relying on their amended complaint, they submit that they allege more than design defects in any event. *See* Resp. at 10-11 & n.6. In addition, they note that ¶¶ 136-37 of their amended complaint rely on the Uniform Commercial Code for their warranty claims. *Id*. at 11.

At the same stage of litigation, this Court previously rejected the same argument by Defendant in a different case. *See Gehan Homes, Ltd. v. NIBCO Inc.*, No. 5:19-CV-1478-JKP, 2020 WL 5110707, at *9 (W.D. Tex. Aug. 31, 2020). As was the case in *Gehan*, the Court remains unconvinced that Plaintiffs' "warranty claim is limited to mere design defects." *See id*. Based on Plaintiffs' allegations in this case, the Court finds no basis to limit the express warranty claim to design defects alone. Accordingly, the express warranty claim survives the motion to dismiss.

## X. IMPLIED WARRANTY CLAIMS

Plaintiffs assert two implied warranty claims – breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular use. Defendant argues that both claims fail with respect to the Alabama Plaintiffs because Alabama does not recognize implied warranty claims for remote manufacturers. Mot. at 12. It also argues that the second implied warranty claim fails because there is no "particular use" supporting such a claim. *Id*.

Although Plaintiffs use a heading indicating that they have properly pled their implied warranty claims, the substance of that section of their response merely addresses the timeliness of their claims. *See* Resp. at 12-17. The Court has already rejected Defendant's timeliness argument at this stage of the litigation, so that matter will not be re-addressed here. Nevertheless, Plaintiffs have alleged that "NIBCO manufactured and/or supplied the PEX Products" and "impliedly warranted to Plaintiffs, their agents, and other similarly situated Class members that the PEX Products were of merchantable quality and fit for the use for which they were intended." *First Am. Class Action Compl.* ¶¶ 149, 156. They further allege that (1) "[t]he PEX Products were unfit for their intended use and were not of merchantable quality," *id*. ¶ 152, and (2) "[t]he PEX products were unfit for their intended use and instead were defective products unfit to be used in plumbing systems installed in residential homes., *id*. ¶ 161.

Because Plaintiffs allege that Defendant is more than a remote manufacturer, the instant motion to dismiss provides no basis to dismiss any implied warranty claim on grounds that Alabama law does not recognize such claims for remote manufacturers. Based on their allegations, the Court finds a plausible basis for finding that either Plaintiffs or an agent purchased products directly from Defendant.

Further, based on the allegations in this case, it appears that Plaintiffs have made sufficient factual allegations as to a particular purpose. While the PEX products are ordinarily used in installing a plumbing system, the alleged particular use for which at least some products were allegedly unfit is for installing a residential or commercial plumbing system that carries chlorinated water. Absent persuasive argument as to that apparent particular use, the Court declines to dismiss the claim on the allegations of this case. *But see Cole v. NIBCO, Inc.*, No. 3:13-CV-07871, 2015 WL 2414740, at *10 (D.N.J. May 20, 2015) (dismissing particular purpose claims under Texas and Alabama law on the allegations of that case). Additionally, unlike the *Cole* case, Plaintiffs

have alleged facts that Defendant had reason to know that its products would be used for residential or commercial purposes. *See First Am. Class Action Compl.* ¶¶ 55 (website describing production of fittings used in industrial and residential construction), 57 (alleging that Defendant avails itself of consumers "through the manufacturing, distribution, promotion, installation by homebuilders, and sales of its products"), 80 (website describing Defendant as a "recognized leading provider of valves, fittings and flow control products for commercial, industrial and institutional construction as well as residential and irrigation markets").

For these reasons, the Court denies the motion to dismiss any implied warranty claim.

## XI. TORT AND PRODUCT LIABILITY CLAIMS

Defendant claims that Plaintiffs have inadequately pled their negligence claims and the claim under the Texas Product Liability Act ("TPLA"). *See* Mot. at 15-16. It argues that a cursory mention of a manufacturing defect does not suffice and that the operative pleading fails to identify an alternative and safer design or alternate materials. *See id.* In addition, it argues that Plaintiffs failure-to-warn claim fails because (1) the Robinsons cannot maintain a claim against a remote manufacturer, (2) neither state recognizes a post-sale duty to warn, (3) pre-sale duty to warn in Texas does not extend to alleged design defects, and (4) Defendant has no duty to warn in the absence of dates as to when it allegedly became aware of defective products relative to the dates of installation. *See id.* at 16-17.

Plaintiffs state that they do not assert a claim for manufacturing defect. Resp. at 20 n.9. Such a claim is thus not at issue in this case. But contrary to Defendant's assertion in reply, *see* Reply at 4, that does not mean that Plaintiffs' express warranty claim necessarily fails. And, at least for PEX fittings and clamps, Plaintiffs sufficiently allege alternate design or materials. *See First Am. Class Action Compl.* ¶ 101. Therefore, Defendant's stated reasons for dismissing these claims fail. Plaintiffs need only state a plausible claim to survive a Rule 12(b)(6) motion. And a

motion to dismiss is generally not the vehicle to delve deeply into the various iterations of a par-

ticular claim or claims. On a motion for summary judgment, Defendant can further flesh out

whether certain aspects of these claims fail for lack of an alternative and safer design or alternate

materials.

As for the failure-to-warn claim, Plaintiffs explain that they allege a negligent failure to

warn as well as a failure to warn as part of their TPLA claim. Resp. at 21. They contend that their

allegations satisfy the standards for surviving a motion to dismiss, Defendant expects more facts

than warranted under Rule 12(b)(6), and the Robinsons have asserted a plausible claim under Al-

abama law. *See id.* at 21-22.

In *Gehan*, this Court previously addressed a NIBCO motion seeking to dismiss a failure-

to-warn claim. While there are differences between the cases, some parallels remain. First, De-

fendant again "expects too much from the notice pleading requirements of the Federal Rules of

Civil Procedure." *See Gehan Homes, Ltd. v. NIBCO Inc.*, No. 5:19-CV-1478-JKP, 2020 WL

5110707, at \*11 (W.D. Tex. Aug. 31, 2020). In this case, Defendant expects too much when it

expects a plaintiff to plead specific dates as to when a defendant became aware of defective prod-

ucts. Rule 8(a) does not require such specificity. Second, Plaintiffs appear to properly plead design

and marketing defects in the alternative. *See First Am. Class Action Compl.* ¶ 196. When viewed

as alternative  claims, Plaintiffs plausibly allege that Defendant's products were rendered unsafe

by the lack of warnings, even if they were adequate as designed. *See id.* ¶¶ 203-10.

As for Defendant's assertion that neither Texas nor Alabama recognize a post-sale duty to

warn, the Court finds the conclusory assertion insufficient to support dismissal. Although Defend-

ant provides two cases to support the assertion, neither case is as definitive as suggested.

The case applying Texas law, *McLennan v. American Eurocopter Corporation*, 245 F.3d

403 (5th Cir. 2001), resulted from "a bench trial on the relevant issues" *see* 245 F.3d at 408. It thus

provides questionable guidance as to whether Plaintiffs' failure-to-warn claims should survive the instant motion to dismiss. Furthermore, *McLennan* merely recognizes that, in a products liability context, "Texas courts generally do not recognize any post-sale duty to warn of product hazards arising after the sale." *See id*. at 430. Not only are there exceptions to that general rule in that context, but that context is distinct from a negligence theory, which has its own governing legal principles, including possibilities for a post-sale duty to warn. *See id.* at 430-32. The Court will not dismiss a claim on a conclusory assertion and citation to a case arising in a different stage of litigation with recognized exceptions to the legal principle for which it is cited. Nor must it engage in independent research to support or disprove the movant's position. Defendant, as the party seeking dismissal, has the burden to show dismissal is proper. And it fails to do so with conclusory assertions and citations that are not as definitive as suggested.

Defendant's reliance on *Sewell v. Smith & Wesson Holding Corp.*, No. 4:12-cv-00364, 2012 WL 2046830, at *2 (N.D. Ala. June 1, 2012) fares no better. A reading of that case does not reflect a definitive legal principle that is unconnected to the facts of that case. The pertinent portion of the case begins with the proposition that the plaintiff there could only assert a product liability action under one of multiple enumerated possibilities, but the plaintiff had "presented no evidence to support any cognizable claim . . . that would not be precluded" by Alabama law. *Id*. The court further noted that "the plaintiff had proffered no Alabama law showing that . . . the seller, had a post-sale duty to notify the plaintiff." *Id*. Of course, the plaintiffs here have no obligation to present evidence to support their asserted claims. They must only allege enough facts to state a plausible claim. The Court will not rely on *Sewell* to say they failed in that regard.

Similarly, with respect to the Robinsons, the Court finds that Plaintiffs have stated a plausible claim that Defendant is more than a remote manufacturer. Defendant can disagree with Plaintiffs' allegations, but it may not ignore portions of the operative complaint that does not suit its

theory. Summary judgment is where parties put their evidence into the crucible for the Court to determine whether there is a genuine dispute of material fact. At this stage of the litigation, plaintiffs may rely on the allegations in their operative pleading.

For these reasons, the Court denies the motion to dismiss to the extent Defendant seeks to dismiss any tort or products liability claim.

## XII. TEXAS DECEPTIVE TRADE PRACTICES ACT

Defendant moves to dismiss Plaintiffs' claim brought under the Texas Deceptive Trade Practices Act ("DTPA") on grounds that it is a remote manufacturer. Mot. at 17-18. But based on Plaintiffs' allegations, Defendant is more than that. Moreover, consistent with the Texas Plaintiffs' allegations, "if manufacturers make representations or warranties directly to consumers, the latter may sue directly (despite the absence of privity) for breach of express warranty or violation of the DTPA." *PPG Indus., Inc., v. JMB/Houston Ctrs. Partners, Ltd. P'ship*, 146 S.W.3d 79, 90 (Tex. 2004). Furthermore, the Court agrees "that resolution of the privity issue is better suited for the summary judgment stage." *Cerber Prop. sp. z.o.o. S.K.A. v. Tex. Instruments Inc.*, No. 3:18-CV-0992-S, 2019 WL 1432925, at *3 (N.D. Tex. Mar. 28, 2019) (discussing privity in express warranty context).

Defendant also moves to dismiss this claim on grounds that Plaintiffs have not satisfied the particularity requirements of Fed. R. Civ. P. 9(b). *See* Mot. at 18-19. But it is uncertain whether Rule 9(b) applies to DTPA claims. *See Johnson v. Daimler Trucks N. Am., LLC*, No. 1-20-CV-00385-JRN, 2020 WL 6875265, at *2 (W.D. Tex. Aug. 11, 2020) (noting that "[d]istrict courts in Texas are split as to whether the heightened pleading standard applies to claims based on the DTPA"); *Abbey on Preston H.O.A. v. Admiral Ins. Co.*, No. 3:13-CV-0102-N, 2013 WL 12137742, at *2 (N.D. Tex. July 29, 2013) (collecting cases). The crucial factor is whether "the DTPA claims are based on the same facts as the underlying fraud claims." *Johnson*, 2020 WL

6875265, at *2 (W.D. Tex. Aug. 11, 2020) (quoting *Okeke v. Automotive Finance Corp.*, No. A-15-CV-694-LY-ML, 2016 WL 11582509, at *10 (W.D. Tex. Feb. 3, 2016) (recommendation of Mag. J.)). The Fifth Circuit has also noted that "Rule 9(b)'s stringent pleading requirements should not be extended to causes of actions not enumerated therein." *Am. Realty Trust, Inc., v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 (5th Cir. 2004).

Because Plaintiffs do not assert an independent fraud claim, the caselaw supports not applying Rule 9(b) to their DTPA claim. And to the extent the Court were to apply Rule 9(b), it would find Plaintiffs' allegations sufficient to survive dismissal under Rule 12(b)(6). As required by Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Particularity, however, is considered on a case-by-case basis. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *op. modified on other grounds on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id*. Stated succinctly, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Id*. (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

Again, this Court's opinion in *Gehan* is instructive. *See Gehan Homes, Ltd. v. NIBCO Inc.*, No. 5:19-CV-1478-JKP, 2020 WL 5110707, at *12 (W.D. Tex. Aug. 31, 2020) (discussing fraud allegations under Rule 9(b)). In that case, the Court found the "who" to be ""Defendant generically," the "what" to be "that the piping complied with various standards," the "how" to be "affixing standards and certifications on the packaging of PEX 1006 Tubing," the "where" was "throughout the state of Texas," and the "when" to be from 2008 through 2012." *See id.* While recognizing that some elements "might be better connected and direct," it found the allegations sufficient under the circumstances of the case. *See id*.

Here, Plaintiffs submit that they have complied with Rule 9(b) because "they allege the dates of their home purchases, their home builder (DR Horton/subsidiaries), and their reliance on the representations in the PEX Limited Warranty (including citing specific language) as 'part of the home purchasing process.'" Resp. at 24. Under the circumstances of this case, the Court finds the allegations sufficient to provide Defendant fair notice of the DTPA claim. Particularity varies case-by-case, and in this case, Plaintiffs' allegations have satisfied the particularity requirements of Rule 9(b).

The Court thus denies the motion to the extent Defendant seeks to dismiss Plaintiffs' Texas DTPA claim.

## XIII. ALABAMA DECEPTIVE TRADE PRACTICES ACT

Defendant similarly moves to dismiss the claim asserted under the Alabama Deceptive Trade Practices Act ("ADTPA") for noncompliance with Fed. R. Civ. P. 9(b). Mot. 19-20. It also seeks to dismiss the claim to the extent it is duplicates the express warranty claim. *See id*. at 20. Considering Plaintiffs' allegations, *see*, *e.g*., *First Am. Class Action Compl.* ¶¶ 28 and 36, the argument based on Rule 9(b) fails for the same reasons as the arguments against the Texas DTPA. The Court, furthermore, declines to dismiss a plausible claim at this juncture merely on a conclusory contention that it duplicates another claim. Accordingly, the Court denies the motion as it pertains to the ADTPA.

## XIV. UNJUST ENRICHMENT

Defendant also asserts that no Plaintiff can maintain a claim for unjust enrichment. *See* Mot. at 20. The Court, however, accepts the claim as an alternative claim to Plaintiffs' warranty claims, *see First Am. Class Action Compl.* ¶¶ 227-32, and further finds that Plaintiffs have stated a plausible claim for unjust enrichment under the circumstances of this case. The Court, therefore, denies the motion to the extent Defendant seeks to dismiss the unjust enrichment claim.

## XV. SUMMARY REGARDING ALLEGED PLEADING DEFICIENCIES

Defendant makes wide and varied challenges to Plaintiffs' First Amended Class Action Complaint. While some were a closer call than others, they all failed for one reason or another. Defendant simply did not carry its burden to show that dismissal is warranted at this stage. The following paragraph from the Court's prior ruling against Defendant bears repeating:

> As should be abundantly clear from the resolution of the alleged pleading deficiencies with respect to specific claims, Defendant often minimizes the factual allegations of Plaintiff, expects more factual detail than required by federal pleading requirements, and takes a much too strict approach as to whether allegations satisfy those pleading requirements and whether a claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6). The Court finds the alleged general failures asserted herein do not warrant dismissing the amended complaint or any claim asserted therein. At this stage of the litigation, the Court is only determining whether Plaintiff has made factual allegations sufficient to state a plausible claim. Plaintiff has alleged facts that raise a right to relief above the speculative level. From the alleged facts, the Court can draw a reasonable inference that Defendant is liable for the alleged misconduct. On the facts alleged in the First Amended Complaint, the Court should permit Plaintiff to present evidence to support its claims. The Court is not deciding that Plaintiff will ultimately succeed on any claim.

*Gehan Homes, Ltd. v. NIBCO Inc.*, No. 5:19-CV-1478-JKP, 2020 WL 5110707, at *13 (W.D. Tex. Aug. 31, 2020).

## XVI. STAY

As previously discussed, this case is currently stayed pending resolution of the motion to dismiss. For the reasons stated in the order staying this case, the Court agrees that judicial efficiency and the interests of the putative class members merit extending the stay in this matter. This is an unusual case in that two parallel putative class actions are both proceeding. The *Matson* case has apparently reached the home stretch and the parties are in the process of finalizing the settlement and necessary notice to putative plaintiffs. Neither this Court nor the parties (or counsel) in this case should interfere with that earlier filed action. Extending the stay in this case is warranted.

Until the Court in *Matson* issues a determination on final approval, this case is stayed

entirely except that (1) Defendant shall file its answer to the First Amended Class Action Complaint as ordered in the next paragraph and (2) the parties may conduct the jurisdictional discovery permitted by this Order. **This means that the parties may conduct discovery about the extent that asserted Alabama claims arise out of or results from Defendant's Texas contacts.** If any party reasonably believes that other discovery may be useful regarding personal jurisdiction, such party may seek leave of court to proceed with it. Absent further order of the Court, there will be no other discovery, including discovery into class allegations. The Court, furthermore, will not consider any motion for leave to amend the complaint while this case remains stayed. Until the earlier case runs its course, this case will proceed only with respect to the jurisdictional discovery permitted herein.

### XVII. CONCLUSION

For the foregoing reasons the Court **DENIES** *Defendant NIBCO Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint* (ECF No. 14). Consistent with Fed. R. Civ. P. 12(a)(4)(A), Defendant shall file its answer to the First Amended Class Action Complaint within fourteen days of the date of this Order. And, other than the jurisdictional discovery granted herein, this case remains stayed pending a determination on final approval in *Matson v. NIBCO*, No. 5-19-CV-717-RBF (W.D. Tex. filed June 19, 2019).

**IT IS SO ORDERED this 18th day of March 2021.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**